IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

COURTNEY ADKINS,

                Plaintiff,

v.                                                  CIVIL ACTION NO.   2:16-cv-03343

CREDIT ACCEPTANCE CORPORATION,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Credit Acceptance Corporation's Partial Motion to Dismiss. (ECF No. 12.)  For the reasons that follow, the motion is **GRANTED**.  Plaintiff may file an amended pleading rectifying the deficiencies identified herein within fourteen days.

I.      BACKGROUND

Plaintiff Courtney Adkins alleges that around May 2013, Defendant Credit Acceptance Corporation ("Credit Acceptance") began making debt collection calls to her personal cellular telephone number.  (First Am. Compl. ¶ 14.)  Plaintiff claims that she did not owe a debt to Credit Acceptance, nor had she provided her cell phone number "during a transaction that created a debt." (*Id.* ¶ 22.)  Nevertheless, Credit Acceptance allegedly used an automatic telephone dialing system to make hundreds of calls to Plaintiff's cell phone under the pretense that Plaintiff was obligated to make payment on a debt owed to it.  (*Id.* ¶ 25.)  During the calls, Credit Acceptance would solicit payment in various ways, at times asking if Plaintiff "wanted to make a payment," and at others asking "how much she wanted to pay on the debt."  (*Id.* ¶ 24.)

Plaintiff brings this civil action on her own behalf and on behalf of a putative class of individuals who received harassing debt collection calls in similar circumstances. The Court has jurisdiction under the Class Action Fairness Act. 28 U.S.C. § 1332(d)(2). The three-count First Amended Complaint alleges violations of the Telephone Consumer Protection Act ("TCPA"), (Count I), and the West Virginia Consumer Credit and Protection Act ("WVCCPA"), (Counts II and III). With regard to the WVCCPA claims, Count II alleges misrepresentation of the amount of a claim in violation of West Virginia Code § 46A-2-127 and is brought as an individual claim and on behalf of the putative class. Count III, an individual claim only, alleges oppressive and abusive debt collection in violation of West Virginia Code § 46A-2-125. Credit Acceptance moves to dismiss both WVCCPA claims.[1] The motion, having been fully briefed, is ready for disposition.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations "must be simple, concise, and direct" and "[n]o technical form is required." Fed. R. Civ. P. 8(d)(1). A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a civil complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).

---

[1] The TCPA claim is not implicated by the motion to dismiss.

2

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* While "*Iqbal* and *Twombly* do not require a plaintiff to prove [her] case in the complaint," the complaint must "allege facts sufficient to state elements of the claim." *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 441 (4th Cir. 2015) (quoting *Robertson v. Sea Pines Real Estate Companies, Inc.*, 679 F.3d 278, 284 (4th Cir. 2012)) (internal quotation marks omitted).

### III. DISCUSSION

Credit Acceptance moves for the dismissal of Counts II and III for two reasons, both related to the applicability of the WVCCPA. Credit Acceptance's initial argument goes to standing. Simply put, Credit Acceptance alleges that Plaintiff is not a "consumer" under the WVCCPA and the relief afforded under that statute is thus out of reach. Credit Acceptance next argues that even if Plaintiff has standing on Counts II and III, she fails to allege that any debt she allegedly owed was incurred primarily for "personal, family, or household purposes," a necessary element of both causes of action. The Court will discuss each argument in the order presented by Credit Acceptance.

*A.    Standing under the WVCCPA*

The WVCCPA exists "to protect consumers from unfair, illegal, and deceptive acts or practices" of their creditors. *Dunlap v. Friedman's, Inc.*, 582 S.E.2d 841, 846 (W. Va. 2003)

3

(citation and internal quotation marks omitted). Consistent with this policy, "a plaintiff must be a consumer to bring a private cause of action under the [WVCCPA]." *McNeely v. Wells Fargo Bank, N.A.*, 115 F. Supp. 3d 779, 784 (S.D. W. Va. 2015) (citing W. Va. Code § 46A-5-101(1) (2006)). Counts II and III arise under Article 2 of the WVCCPA, which defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." W. Va. Code § 46A-2-122(a). The parties agree that Plaintiff has no debtor-creditor relationship with Credit Acceptance. Plaintiff thus has standing to bring Counts II and III only if she was "allegedly obligated" to pay a debt. *Id.*

The Court does not write on a blank slate in defining this term. "Courts consider a person 'allegedly obligated' to pay a debt when the creditor has 'represented to [her] that [she] is personally liable on the debt." *McNeely*, 115 F. Supp. 3d at 785 (quoting *Fabian v. Home Loan Ctr., Inc.*, No. 5:14-cv-42, 2014 WL 1648289, at *6 (N.D.W. Va. Apr. 24, 2014)). In this manner, "[t]he term 'alleged obligation' extends the reach of the WVCCPA to certain collection activities conducted without regard to whether the debt is actually owed." *McGuire v. Jim Walter Homes, LLC*, No. 5:14-CV-14299, 2014 WL 5149725, at *7 (S.D.W. Va. Oct. 14, 2014) (citing *Fabian*, 2014 WL 1648289 at *6). This Court has repeatedly found that direct solicitations from a creditor for payment are indicative of an alleged obligation to pay a debt. *McNeely*, 115 F. Supp. 3d at 785 (noting the absence of such solicitation as one of several factors indicating that the plaintiff, who had no debtor-creditor relationship with the defendant, lacked standing under the WVCCPA).; *McGuire*, 2014 WL 5149725, at *7 (finding genuine issue of material fact existed as to whether plaintiffs, who were repeatedly solicited by a creditor to make payments on a debt, were "allegedly obligated" to pay the debt); *Croye v. GreenPoint Mortgage Funding, Inc.*, 740 F. Supp. 2d 788,

798 (S.D. W. Va. 2010) (finding factual issue existed as to whether plaintiff was allegedly obligated to pay a debt not actually owed, but nevertheless solicited by a creditor).

Both parties rely heavily on the Court's decision in *Croye*. In *Croye*, a husband and wife refinanced the mortgage on their home, but only the wife signed the promissory notes. 740 F. Supp. 2d at 790. Some years later, the couple divorced and the wife attempted to re-convey her interest in the property to her now-estranged husband, who assumed the mortgage payment.[2] The couple later sued the mortgage servicer, contending that the servicer violated the WVCCPA by contacting both plaintiffs in an attempt to collect on the debt, notwithstanding the plaintiffs' representation by counsel. The servicer argued that the husband lacked standing to sue under the WVCCPA—because the husband did not execute the loan refinance, the servicer claimed that he did not meet the definition of a "consumer." This Court found otherwise, reasoning that the servicer's repeated efforts to collect payment from the husband "suggested the existence of an alleged obligation . . . to pay the loans." *Id.* at 797.

The alleged harassment that Plaintiff experienced in this case would seem to be factually akin to that endured by the non-debtor husband in *Croye*. Credit Acceptance, however, attempts to distinguish *Croye* by arguing that its holding was based primarily on evidence that the husband had signed the deed of trust and other loan documents and later assumed payment of the debt. It stresses that there are no similar allegations making Plaintiff personally liable for the debt in this case. Credit Acceptance apparently believes that the term "allegedly obligated" applies only where the facts provide a basis upon which the creditor could justifiably attribute personal liability to the plaintiff for a debt. Because "[t]here is no allegation . . . that Credit Acceptance represented

---

[2] It is unclear whether the conveyance of the wife's property interest to the husband was successful. *Croye*, 740 F. Supp. 2d at 792 n. 5.

5

to Plaintiff that *she* owed a debt," Credit Acceptance concludes that there can be no alleged obligation to pay. (Reply at 2, ECF No. 19 (emphasis in original).)

Credit Acceptance suffers from a myopic view of both *Croye* and the facts alleged in the First Amended Complaint. *Croye*'s reasoning was not, as Credit Acceptance argues, tied exclusively to the husband's participation in the loan refinance. Rather, it was the mortgage servicer's treatment of the husband, manifested through repeated collection attempts, that was central to the Court's finding on the "alleged obligation" question. *Croye*, 740 F. Supp. 2d at 797. *Croye* cited *Diaz v. K.L. Recovery Corp.*, 486 F. Supp. 2d 474 (E.D. Pa. 2007), a case addressing the issue of standing in the context of a Fair Debt Collection Practice Act ("FDCPA") claim.[3] In *Diaz*, "the plaintiff received phone calls demanding payment for outstanding summonses against the father of her children," whereby the defendants "threatened to repossess all of her household belongings and her car if she didn't pay." *Croye*, 740 F. Supp. 2d at 798–99 (citing *Diaz*, 486 F. Supp. 2d at 475). Though the plaintiff did not owe the debt in question, the defendants' attempts to hold her personally liable meant that she could sue as a consumer "allegedly obligated' to pay a debt. *Diaz*, 486 F. Supp. 2d at 477. Together, these cases establish that a creditor's actions alone are sufficient to give rise to an "alleged obligation" to pay a debt, so long is there is evidence of an attempt to hold the plaintiff personally liable.

Turning to the First Amended Complaint, the Court finds sufficient allegations that Credit Acceptance represented to Plaintiff that she was personally liable on a debt. During some of the alleged phone calls, Credit Acceptance demanded to know "whether *she* planned to make a payment during the call" or if "*she* wanted to make a payment." (First Am. Compl. ¶ 24 (emphasis

---

[3] Like the WVCCPA, the FDCPA defines a consumer as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

added).) Other times, Credit Acceptance called to ask Plaintiff "how much *she* wanted to pay on the debt." (*Id.* (emphasis added)). As alleged, Plaintiff had every reason to think that Credit Acceptance believed that *she* was indebted to it. While the facts surrounding these claims are left murky, the Court has no trouble finding at this stage that Plaintiff has plausibly pled the existence of an alleged obligation to pay a debt. Plaintiff would, then, qualify as a consumer with standing to sue under the WVCCPA.

### B. Failure to Plead Existence of a "Claim"

Having found that Plaintiff has standing to sue under the WVCCPA, the Court turns to Credit Acceptance's alternative argument. Credit Acceptance moves to dismiss Counts II and III because it asserts that Plaintiff fails to alleged Credit Acceptance attempted to collect upon a "claim" as defined in the WVCCPA. This argument, unlike the first, is successful.

Counts II and III of the First Amended Complaint are brought under West Virginia Code §§ 46A-2-127 and 125, respectively. Section 46A-2-127 states that "[n]o debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers," while § 46A-2-125 mandates that "[n]o debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another." An essential element of a cause of action under either provision is the collection or attempted collection of a "claim." The WVCCPA defines a "claim" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household

purposes, whether or not such obligation has been reduced to judgment." W. Va. Code § 46A-2-122(b).

Credit Acceptance argues that Counts II and III must be dismissed because Plaintiff fails to allege that the debt at issue was incurred "primarily for personal, family or household purposes." Plaintiff does not respond to this particular argument. And Credit Acceptance is correct—there is no allegation in the First Amended Complaint indicating whether the debt at issue was a "claim" within the WVCCPA's ambit. Although Plaintiff alleges that she did not owe a debt to Credit Acceptance, presumably someone did, and there is no way of telling whether that debt was incurred "primarily for personal, family, or household purposes," and thus covered by the statute, or primarily for commercial purposes, which would not be covered. *Morris v. Marshall*, 305 S.E.2d 581, 584 (W. Va. 1983) ("[B]ecause the loans were made for commercial purposes, the financing of an automobile dealership, they are not 'consumer loans' within the purview of the [WVCCPA]."). Plaintiff's failure to allege facts sufficient to state this element is fatal. *See SD3, LLC*, 801 F.3d at 441 (citation omitted).

On this point, case law interpreting the FDCPA is instructive. The FDCPA also requires that an obligation giving rise to challenged collection efforts be "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). In that setting, courts typically require consumers to plead the nature of the debt in his or her pleading. *Scarola Malone v. Zubatov LLP v. McCarthyu, Burgess & Wolff*, 638 Fed. App'x 100, 103 (2d Cir. 2016) ("Scarola did not include any factual allegations in his Complaint to support the inference that the amount in dispute arose from a consumer transaction, and, accordingly, he failed to state a claim upon which relief could be granted."); *Cederstrand v. Landberg*, 933 F. Supp. 804, 806 (D. Minn. 1996) ("[Plaintiff] does

8

not allege in his complaint that any transaction involving an offer or extension of credit was undertaken "primarily for personal, family, or household purposes" . . . Plaintiff has therefore failed to state a claim upon which relief may be granted."). The Supreme Court of Appeals of West Virginia has looked to federal interpretation of the FDCPA for guidance in construing the WVCCPA, *see Fleet v. Webber Springs Owners Assoc., Inc.*, 772 S.E.2d 369, 379 (W. Va. 2015), and the Court will do the same here. Accordingly, the Court finds that in bringing claims under §§ 46A-2-125 and 127, the consumer must allege facts sufficient to give rise to an inference that the debt at issue comes within the purview of the statute.

There is no factual material in the First Amended Complaint from which the Court can draw such an inference. Plaintiff has failed to plead the threshold requirement that Credit Acceptance attempted to collect a "claim" as defined by the WVCCPA, and Counts II and III are subject to dismissal. The next question is whether the claims should be dismissed with prejudice, as Credit Acceptance requests. Under Federal Rule of Civil Procedure 41(b), dismissal for failure to state a claim operates as an adjudication on the merits unless the court determines otherwise. Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits."). The district court maintains the discretion to determine whether dismissal under Rule 12(b)(6) is with or without prejudice. *Payne ex rel. Estate of Calzada v. Brake*, 439 F.3d 198, 204 (4th Cir. 2006). Rule 15, which requires that a court give leave to amend a pleading "when justice so requires," guides the determination. Fed. R. Civ. P. 15(a)(2).

Here, the Court suspects that Plaintiff can readily amend her pleading to clarify that Credit Acceptance attempted to collect upon a "claim" as defined by the WVCCPA. The Court also finds that because discovery proceedings in this action are temporarily stayed at Credit Acceptance's request, any prejudice caused by an amendment will be minimal. The Court therefore grants Plaintiff leave to amend her pleading.

## IV. CONCLUSION

For these reasons, the Partial Motion to Dismiss, (ECF No. 12), is **GRANTED**, and Counts II and III of the First Amended Complaint are hereby **DISMISSED**. Plaintiff may file an amended pleading within fourteen days of the issuance of this opinion clarifying whether the debt "allegedly owed" was primarily for personal, family, or household purposes.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: December 28, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE